## STEAM-ENGINE COMPANY *v.* HUBBARD.

A statute of Connecticut enacts that the president and secretary of each corporation organized thereunder shall annually make a certificate showing the condition of the affairs of the corporation, as nearly as the same can be ascertained, on the first day of January or July next preceding the time of making such certificate, setting forth the amount of capital actually paid in, the cash value of its credits, the amount of its debts, the name and number of shares of each stockholder, and deposit it, on or before the fifteenth day of February or August, with the town clerk of the town in which the corporation transacts its business. It also provides that if such president or secretary shall intentionally neglect or refuse to comply with said provisions, and to perform the duty required of them respectively, the persons so neglecting or refusing shall be jointly and severally liable to an action founded on the statute for all debts of such corporation contracted during the period of such neglect or refusal. In an action by a creditor of such corporation against its president, — *Held*, 1. That the statute is penal, and must be strictly construed. 2. That the defendant is not liable, if the debt was contracted by the corporation before, although it may remain unpaid during the period when he neglected or refused to comply with the requirements of the statute.

ERROR to the Circuit Court of the United States for the District of Connecticut.

This is an action by the Providence Steam-Engine Company, a creditor of the Odorless Rubber Company, a joint-stock corporation organized under the laws of Connecticut, to recover from Charles Hubbard, president of the latter company, the amount due by it to the plaintiff.

The remaining facts, and the statute of Connecticut under which the action is brought, are set forth in the opinion of the court.

*Mr. Charles E. Perkins* for the plaintiff in error.
*Mr. A. P. Hyde, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Statutory regulations were enacted by the State to enable the business public to ascertain the pecuniary standing of joint-stock corporations, and for that purpose it was made the duty of the president and secretary of every such corporation annually to make a certificate showing the condition of the affairs of the corporation, as nearly as the same can be ascertained, on the first day of January or of July next preceding the time of

making such certificate, stating the amount of paid capital, the cash value of its credits, the amount of its debts, and the name and number of shares of each stockholder, which certificate it is required shall be deposited, on or before the 15th of February or of August, with the town clerk of the town, who shall record the same at full length. Conn. Rev. Stat., sect. 404, p. 172.

Such an officer, whether president or secretary, if he intentionally neglects or refuses to comply with that requirement and perform the duty therein specified, is declared to be liable to an action founded on the statute for all debts of such corporation contracted during the period of such neglect or refusal. Id., p. 174, sect. 413.

Sufficient appears to show that the Odorless Rubber Company was a joint-stock corporation legally organized in 1870, at Middletown, under the laws of the State. About the time of its organization, to wit, on the 9th of September of that year, C. C. Post was elected president, and it appears that he was twice re-elected at the annual meetings of the stockholders, each held in April of the two succeeding years, and that he continued to hold the office until the 17th of June following his last election, when he resigned. During all the period he was in office there was a secretary.

Neither the president nor the secretary during that period deposited with the town clerk any certificate required to be so filed by the law of the State, except as follows: On the 20th of June, 1871, the president and secretary did deposit such a certificate, showing the condition and assets of the company on the first day of April of that year.

Prior to the 10th of June of the next year the defendant was not even a stockholder of the company, but it appears that he on that day signed the subscription paper exhibited in the record for two hundred shares of new stock of the company, and that eight days later he paid $1,800 towards his subscription. His promise to pay was conditional, that is, he was to pay $6.25 per share whenever cash subscriptions to the amount of $118,000 should be obtained, and the balance in equal monthly instalments of ten per cent each from the date of the subscription, . . . it being understood that none of said subscriptions shall be valid or obligatory until at least said amount

of $118,000 shall have been subscribed and thirty per cent deduction is made in the old stock. Subscriptions to the required amount were obtained, but no evidence was offered to show that the thirty per. cent deduction in the old stock was ever made.

Evidence to show that the defendant was ever elected a director is entirely wanting, but it is shown that on the day the old president resigned, the board of directors elected him president of the corporation in the place made vacant by the resignation of his predecessor, and that thereafter he acted as president and stockholder, and that he continued to act as such until the 2d of September in that year, when he resigned said office.

Beyond all doubt, he was during that period the acting president of the corporation, and the bill of exceptions shows that he never made any statement of the condition and assets of the company, until the day he resigned his office. Attempt is made by the plaintiffs to show that he was culpably guilty of neglect in that regard; but the bill of exceptions also shows that on that day he, with the secretary, made out in due form and deposited a certificate of the condition and assets of the company as they existed on the first day of July, two weeks subsequent to the day of his election as president of the corporation.

More than three months before the defendant was elected president, the plaintiffs entered into a written agreement with the rubber company, by which they contracted to furnish the company a steam-engine for $5,700, and it appears that they constructed the engine and shipped and delivered it to the purchasers; that the manufacturers subsequently placed it in position and put it in good running order, to the satisfaction of the buyers. Due delivery of the same having been made, the buyers made a cash payment and gave a note for a part of the price, which was never paid, leaving more than $5,000 unpaid when the rubber company was adjudged bankrupt. Payment being refused, the plaintiffs brought this suit against the defendant as president of the rubber company, claiming that the debt was contracted during the period that he was guilty of neglect in not making and depositing the before-described

certificate, and that in consequence of such neglect he is liable for all the debts of such corporation contracted during that period.

Service was made, and the defendant appeared and denied the truth of all the matters alleged in the declaration. Subsequently the parties went to trial, and the verdict and judgment were in favor of the defendant. Exceptions were filed by the plaintiffs, and they sued out a writ of error and removed the cause into this court.

When the plaintiffs rested their case, the defendant requested the court to instruct the jury to return a verdict in his favor; and the bill of exceptions shows that the Circuit Court, being of the opinion that there were no disputed questions of fact, gave the instruction as requested, and that the verdict was in conformity with the instruction. Opposed to that, the plaintiffs insist that the facts proved entitled them to the verdict, and they assign for error the instruction given by the Circuit Court to the jury.

Three principal defences are set up by the defendant, as follows: 1. That he was never legally elected president of the corporation. 2. That the debt was not contracted while he was acting in the capacity of president of the company. 3. That by the proper construction of the State statute he is not liable for the debt due to the plaintiffs, even if the first two points cannot be sustained.

Preliminary to those inquiries, the defendant contends that the statute upon which the action is brought is penal and should be strictly construed; in which proposition the court unhesitatingly concurs. Statutes somewhat similar in character have been passed in several of the States, in all of which States it is held that the statutes are penal, and that for that reason their provisions must receive a strict construction. Take, for example, the statute of New York, which provides that, on failure of the company within twenty days from the 1st of January to make, publish, and file an annual report, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made, it has repeatedly been held that the act was penal, and that it could

not be extended by construction to cases not fairly within its language. Hence it was decided that the trustees could not be held liable on account of the failure to publish and file the annual report, unless the debt was contracted during the default, or unless it existed at the time of a subsequent default. *Garrison* v. *Howe*, 17 N. Y. 458; *Boughton* v. *Otis*, 21 id. 261.

. Repeated instances have occurred where suit was brought in one State to enforce the statute liability for the debts of a corporation created by the legislature of another State, in all which it is held that the statute is penal, and that it can only be enforced in the State where the statute was passed. *Halsey* v. *McLean*, 12 Allen (Mass.), 438; *Derrickson* v. *Smith*, 3 Dutch. (N. J.) 166; *Sturges* v. *Burton*, 8 Ohio St. 215; *Bank* v. *Price*, 33 Md. 487; *Irwin* v. *McKeon*, 23 Cal. 472.

. Corresponding decisions have been made in other courts, and to such an extent as to justify the remark that the rule is universal. *Bird* v. *Hayden*, 1 Robt. (N. Y.) 383; *Moier* v. *Sprague*, 9 R. I. 541.

Suppose that is so, then it is contended by the defendant that the act cannot be enforced against him unless it appears that he was legally elected president, and that he was under legal obligation to perform the duties of that office.

Persons acting publicly as officers of a corporation are ordinarily presumed to be rightfully in office. *Bank of the United States* v. *Dandridge*, 12 Wheat. 64; Angell & Ames, Corp. (9th ed.), sect. 139. Individuals elected and serving as such officers may incur the statute liability for the corporate debts of the company, even though irregularities occurred in their election, if in all other respects the evidence brings them within the category of legal default. *Newcomb* v. *Reed*, 12 Allen (Mass.), 362; *Hagner* v. *Brown*, 36 N. H. 545, 563.

Stockholders elect the directors, and it is claimed by the defendant that he was not legally elected president, because he was not a stockholder, the condition of his subscription having never been fulfilled; but he paid the first instalment, and the evidence reported shows that he acted as a stockholder from the time of his election as president until his resignation. His subscription to the new stock was made before he was elected

president, and the bill of exceptions shows that on the following day he paid the required amount of his subscription.

Power to elect the president is vested in the directors; and the record shows that he was.formally elected to the office, and that he acted in that capacity for a month and a half, when he resigned.  Beyond controversy, he was the acting president, and in view of the circumstances the court. is not inclined to rest the decision of the case upon the ground that the defendant was not, during the period he performed the. duties devolved upon the president of the company, legally responsible for the neglect to comply with the requirement of that statute. He acted as. president during that period, and, therefore, is liable, if any liability exists, notwithstanding the informality of his election.   *Thayer* v. *New England .Lithographic Co.,* 108 Mass. 521.

Three months before he was elected president the company contracted with the plaintiffs for a steam-engine, but it was not shipped for delivery to the purchasers until four days after he was elected president and commenced to perform the duties of his office.

Certificates of the kind are required to be deposited with the town clerk on or before the 15th of February or of August, and the provision is that the persons neglecting or refusing to comply with such requirements "shall jointly and severally be liable to an action founded on the statute for all debts of such corporation contracted during the period of such neglect or refusal."   Intentional neglect and refusal create the liability, and the liability extends to the debts contracted by the company during the period of such neglect and refusal, and to no others, which of itself is sufficient to disprove the theory of the plaintiffs that the defendant can in any view be held liable for the default of his predecessor.

Officers of the kind .are responsible for the consequences of their own neglect or refusal to comply with the statute requirement while they remain in office, and they continue to be liable for. those consequences even after they go out of office; but they are not responsible for the consequences of subsequent defaults committed by their successors, nor are the successors in such offices in any way responsible for the consequences of

such defaults committed by their predecessors in office, for the plain reason that the language of the statute is that the persons so neglecting or refusing . . . shall be liable in an action founded on the statute for all debts of the corporation contracted during the period of such neglect or refusal. *Boughton* v. *Otis,* 21 N. Y. 261.

Much aid in construing the statute in question is not required, as the language employed by the legislature speaks its own construction; but if more be needed, it will be found in another decision of the same tribunal as that just cited. *Quarry* v. *Bliss,* 27 id. 277.

Statutes of the kind are passed for the benefit of creditors, and their reliance always is upon the officers who are such when they give the credit, and not upon persons who had ceased to be officers, or who might subsequently become such when those in office should go out.

Three things must concur in order that it can be held that the defendant is liable : 1. That he was president of the corporation. 2. That he intentionally neglected or refused to deposit the described certificate, as required by the statute. 3. That the debt was contracted during the period of such neglect or refusal.

Where all these things concur, the president is liable, not for all the debts of the corporation, but for all such as were contracted while he was guilty of such default. If he was not the president at the time of the default, or if the debt was contracted before he was in default, then he is not liable, as the case is not brought within the letter or spirit of the statute. Liability in such a case, as imposed, is in its nature penal, and in order to render such an officer responsible it must appear that he has neglected or refused to do some act which the law made it his duty to perform. *Craw* v. *Easterly,* 4 Lans. (N. Y.) 513, 521 ; *Bond* v. *Clark,* 6 Allen (Mass.), 361–363 ; *Harrisburg Bank* v. *Commonwealth,* 26 Pa. St. 451.

Marked differences exist between the provisions of the New York statute and those of the State of Connecticut, the latter being much less stringent than the former. By the New York law the duty of making the annual return is required of the corporation itself, and the penalty for neglect is imposed upon the

trustees who are intrusted with the management of its affairs. Consequently it is a corporate duty, and being such each succeeding board is bound to perform it if it has been neglected by their predecessors. Unlike that, the duty to deposit the certificate under the Connecticut statute is devolved on the president and secretary in terms which show that a new president does not inherit the consequences of neglect of duty or pecuniary liability from his predecessor in office. He is made liable for his own neglect and not for that of a prior officer, as clearly appears from the closing sentence of the penal section. In New York the trustees, upon default, are made liable for all the outstanding debts of the corporation, whenever contracted, but in Connecticut the president and secretary are liable only for debts contracted during the period of such neglect or refusal.

Prior to his election the president, as such, had no duty to perform in respect to such a certificate, which is a self-evident proposition, and it is equally clear that his duty in that regard ceased when he ceased to be president of the corporation. Certificates of the kind are required to be made and deposited with the town clerk on or before the 15th of February or of August, as explicitly provided by the statute. On the 15th of February of that year his predecessor was in office, and of course the defendant was under no obligation to deposit any such certificate on that day, nor was he in any manner in default because his predecessor did not perform that duty. Argument to show that he could not make and deposit such a certificate before he was elected is unnecessary, as such a proposition would be absurd, from which it follows that he was not under any legal obligation to perform such a service until the 15th of August of the same year, it appearing that his election as president took place less than two months prior to that time.

Concede that it became his duty as president to make and deposit such a certificate with the town clerk on the 15th of August next after his election, still it by no means follows that the present action can be maintained, as it clearly appears that he was not in default before that time. Proof of default in the defendant without more will not maintain the action, as it

is also incumbent upon the plaintiffs to prove that the debt alleged was contracted during the period of such neglect or refusal. Apply that test to the case exhibited in the record, and it is clear that the defendant is not liable and that the decision of the court below is correct.

When the agreement for the steam-engine was made, the defendant was not president of the corporation, and of course he was not in default at that time, nor was he in default when the engine was delivered and placed in position, because that took place, in any view of the evidence, one month before the 15th of August, when the default of the defendant commenced. Prior to that time the defendant was never in default, and inasmuch as the debt of the plaintiffs was not contracted during the period of his default, he was not liable for that debt. *Garrison* v. *Howe*, 17 N. Y. 458, 462.

*Judgment affirmed.*