## UNITED STATES v. THOMPSON.

### No. 2839.

District Court, E. D. Missouri, E. D.

Dec. 7, 1944.

Robert L. Pierce, Sp. Asst. to Atty. Gen., Harry C. Blanton, Dist. Atty., of Sikeston, Mo., Rosemary M. Ramsey, Sp. Asst. U. S. Atty., of St. Louis, Mo., and Burt L. Smelker, of Washington, D. C., for the Government.

H. H. Larimore, George W. Holmes, and Toll R. Ware, all of St. Louis, Mo., for defendant.

HULEN, District Judge.

This case is before the Court on motion of the defendant to dismiss the complaint. The complaint is based upon an alleged violation of an order issued by the Interstate Commerce Commission on January 11, 1944, to take effect on January 13, 1944, known as Service Order No. 178.[1]

Service Order No. 178 purports to have been issued in conformity with United States Code Annotated, Title 49, section 1, paragraph 15. In substance, the complaint charges violation of Service Order No. 178 by the defendant in the shipment of empty beer containers in refrigerator cars on five separate occasions. A penalty of $500 is sought for each violation.

Defendant contends that authority, if any, for the issuance of Service Order No. 178 is subparagraph d, paragraph 15, section 1, Title 49.[2] This the Government denies, but by brief concedes its willingness to meet defendant on the question thus pre-

---

[1] Those parts of Service Order No. 178 pertinent to this motion read as follows:

"It appearing, That the movement of various commodities, not susceptible to damage by freezing, in refrigerator cars diminishes the use of such cars acutely needed for the transportation of perishable freight; in the opinion of the Commission an emergency exists requiring immediate action to prevent a shortage of refrigerator cars. * * *

"No common carrier by railroad subject to the Interstate Commerce Act shall furnish or supply a refrigerator car or cars for loading with, or transport or move a refrigerator car or cars loaded with lard, lard compounds, lard substitutes, rendered pork fats, vegetable oil shortening, cooking and salad oil, animal tallow, dried fish, dried or powdered skim milk, concentrated citrus juice or empty beer containers. * * *

"It is further ordered, That this order shall become effective at 12:01 a. m., January 13, 1944; that a copy of this order and direction shall be served upon the Association of American Railroads, Car Service Division, as agent of the railroads subscribing to the car service and per diem agreement under the terms of that agreement; and that notice of this order be given to the general public by depositing a copy in the office of the Secretary of the Commission at Washington, D. C., and by filing it with the Director, Division of the Federal Register, The National Archives."

[2] Title 49, Sec. 1(15), U.S.C.A.—

"Whenever the commission is of opin-

sented. On the issue thus narrowed, the defendant contends that Service Order No. 178 is invalid for the following reasons:

1. The Commission did not specify the emergency that, in its opinion, existed;

2. It did not set out the section of the country in which it was supposed to believe the emergency existed;

3. The order is for no specified time and is, in effect, permanent in character; and

4. The provisions of subparagraph d of said paragraph 15 do not empower the Commission to make an order similar to that on which this suit is based.

 We are of the opinion that Service Order No. 178 is not invalid for the reasons assigned in paragraphs 1, 2 and 4 above set out. It would have been more in keeping with the law under which the order was issued had the language of the order more specifically and carefully followed the Act. We think a fair and reasonable interpretation of the order leaves no doubt as to the finding by the Commission of the existence of an emergency and the cause of the emergency. The Commission, under the circumstances referred to in the order, was not required to stand idly by until the emergency had become so great as to convince all who might be affected by the order of the existence of the emergen-cy. The finding of the Commission that the use of refrigerator cars for hauling nonperishable freight is diminishing the use of such cars "actually needed for other transportation" is sufficient basis for the finding of an emergency. The finding by the Commission of the existence of the emergency is a finding of fact which this Court is without authority to overrule, under the circumstances presented by the pleadings. Service Order No. 178 nowhere refers to any section or sections of the United States as a territory, by that (section) particular term. We think a better practice in formulating the order would have been for the Commission to have used terms conforming to the law under which it was acting. However, no reasonable person could be left in doubt, after a reading of the Service Order as to the territory wherein the emergency is found to exist, because the Service Order, instead of reciting that "every section of the country" or "the whole of the United States," used the language "No common carrier by railroad, subject to the Interstate Commerce Act, shall furnish or supply a refrigerator car or car loaded with * * * empty beer containers." If there was any section of the country to which the Commission did not intend the order to apply because of the lack of emergency there existing, then the Commission would have no

---

ion that shortage of equipment, congestion of traffic, or other emergency requiring immediate action exists in any section of the country, the commission shall have, and it is given, authority, either upon complaint or upon its own initiative without complaint, at once, if it so orders, without answer or other formal pleading by the interested carrier or carriers, and with or without notice, hearing, or the making or filing of a report, according as the commission may determine: (a) to suspend the operation of any or all rules, regulations, or practices then established with respect to car service for such time as may be determined by the commission; (b) to make such just and reasonable directions with respect to car service without regard to the ownership as between carriers of locomotives, cars, and other vehicles, during such emergency as in its opinion will best promote the service in the interest of the public and the commerce of the people, upon such terms of compensation as between the carriers as they may agree upon, or, in the event of their disagreement, as the commission may after subsequent hearing find to be just and reasonable; (c) to require such joint or common use of terminals, including main-line track or tracks for a reasonable distance outside of such terminals, as in its opinion will best meet the emergency and serve the public interest, and upon such terms as between the carriers as they may agree upon, or, in the event of their disagreement, as the commission may after subsequent hearing find to be just and reasonable; and (d) to give directions for preference or priority in transportation, embargoes, or movement of traffic under permits, at such time and for such periods as it may determine, and to modify, change, suspend, or annul them. In time of war or threatened war the President may certify to the commission that it is essential to the national defense and security that certain traffic shall have preference or priority in transportation, and the commission shall, under the power herein conferred, direct that such preference or priority be afforded."

authority in such section. By the language used, the Commission made the existence of the emergency co-extensive throughout the country with its authority. We are not in accord with the contention of the defendant in this case that the Commission was without power to find an emergency exists in every section of the country.

We find no merit under the fourth assignment of defendant's brief in its attack on the complaint in this case.

The defendant's third assignment, that "the order is for no specified time and is, in effect, permanent in character", and therefore invalid, presents a more complex problem. We think the language of the act wherein the Commission is authorized by order to "give directions for preference or priority in transportation * * * *for such periods as it may determine,"* sufficient to require compliance by the Commission in the issuance of its order and that means the order should state the period during which the order shall be in effect.[3] If we look further and seek a reason for this provision in the law providing that the order shall be "for such periods" as the Commission may determine, it occurs to us that a cause, and a justifiable one, may well have been that Congress, in passing the Act, decided to place upon the Commission the burden of reexamining their orders at the end of the "period" for which the orders were made, in order to determine if the emergency justifying the issuance of the order still existed. Abstractly stated, section 1, paragraph 15, Title 49, U.S.C.A., gives to the Interstate Commerce Commission unusual, drastic, and in some respects dictatorial powers. Powers of such character delegated to the Commission by this law can and should be exercised only on the basis that they are necessary to meet an emergency—an emergency that does not admit of time for notice and hearing to those whose property would be affected by the order. Consequently the requirement appears in the law, and in our opinion properly so, that the Commission must find the existence of an emergency as a foundation for the exercise of any of the emergency powers to be exercised under the act. It would seem to follow that orders under the powers thus delegated, being justified only because of the existence of an emergency, the continuance in effect of such orders can only be justified because of and so long as the emergency continues.[4] Hence the provision in the law that the emergency order issued would be for such "period" as in the determination of the Commission would meet the emergency. There should be not only the relationship and consistency in the order of the finding of the existence of an emergency, as a basis for its original issuance, but the duration of the order should bear on its face a relationship and consistency with reasonable expectation, based on the judgment of the Commission, of the duration or "period" of continuance of the emergency. If the order is for a period that is limited, it bears that relationship and shows such a consideration and finding by the Commission. Conversely if the order is without a period and to run indefinitely, containing no reference to duration, such an order on its face is inconsistent with the continued existence of the emergency which brought it into existence and fails to show any consideration was given by the Commission to duration or "period" of the emergency.

The law places the burden on the Commission in the first instance of determining the existence of an emergency as a basis for the exercise of the extraordinary powers conferred by the Act, without notice or hearing, and for the issuance of the order. It is apparent from the Act that it was intended that the burden should remain with the Commission to determine the duration of the emergency. By the requirement that the order be for "periods" as determined by the Commission, the Commission is called upon to reexamine conditions at the end of the period during which, at time of issuing the order, in the judgment of the Commission, the emergency would continue. An order containing no limitation as to time and therefore no "period" places no such burden on the Com-

[3] The desirability of following the language of the statute is made more manifest by such holdings as that in Avent v. United States, 6 Cir., 15 F.2d 616, 617: "The power here conferred does not specifically extend to the country as a whole, but only to any section of the country in which, in the opinion of the Commission, an emergency exists."

[4] "The statute *confines* the power of the Commission to emergencies * * *." (Italics added.) Avent v. United States, 266 U.S. 127, loc.cit. 130, 45 S.Ct. 34, 35, 69 L.Ed. 202.

mission. It relieves the Commission of the obligation of determining the duration of the emergency and when it has terminated. An order, on its face, to run indefinitely, calls for no reexamination by the Commission as to the continued existence of an emergency except. at the convenience or pleasure of the Commission, and in effect places upon those whose property is affected the burden of proving to the Commission that the emergency no longer exists.

The Government contends, in its brief, that the Commission is without "powers of divination" and therefore cannot determine the term or duration of an emergency at the time it finds the emergency has come into existence. This does not answer defendant's contention in this regard, nor justify the Court in ignoring the provision of the Act in this respect. An order of the character here under consideration, on its face to run indefinitely, does not even *attempt* to confine its duration to that of the emergency justifying its issuance. The order, having no termination or reference to a termination on its face, was apparently made without reference to the emergency terminating. And referring specifically to the Government's contention that the Commission is without power of "divination", and therefore cannot have guessed the duration of the emergency, we make the observation that the Commission is called upon to exercise only its best judgment. The Commission is not without practice in doing this. The Commission apparently experienced no difficulty in issuing General Permit No. 9 under Service Order No. 178. Service Order No. 178 was to take effect the 13th day of January, 1944. On the 16th day of May, it determined by Permit No. 9 not only that the emergency had ended in twenty-six states of the United States and named them in the general permit order, but further provided that the general permit should terminate on September 1, 1944, thereby finding that the emergency would return some three and a half months after issuing the permit. The Commission should not be heard to claim that it can so "determine" the reoccurrence of an emergency in certain states of the union as evidenced by General Permit No. 9, and could not by the same process pass judgment on the duration of the emergency covered by Service Order No. 178. The Commission in making such prognostications has a means of correcting errors in judgment,

either before or at the end of the period fixed, by ordering a renewal of the order or its cancellation, as the emergency may call for.

We are not unaware of the splendid reputation of the Interstate Commerce Commission as one of the most efficient administrative services of the Government. We have reached the conclusions here expressed only after long and serious consideration of the claims of the respective parties because of our desire to avoid a ruling that would in any way disrupt administrative procedure unless clearly called for in deciding the law questions raised by defendant's motion. The Government's complaint does not charge the violation of any war emergency regulations. The Act under which the Commission purported to act is a general one. Nor does the defendant's motion in the respect referred to come under the classification of a technical objection, in our opinion. It goes to a substantive right of the defendant—a right to be secure in its property and free from orders affecting the use that it may make of its property, without notice or hearing, unless the orders are required by a present emergency and then only during the continuance of the emergency, as the law has provided.

Nothing herein contained should be construed as a holding in any way that the Commission is without power to act in the premises described in the Order. All we are holding is that the Commission must act in accordance with the law, without which law it is powerless to act. Nor should this ruling unduly interfere with the Commission in its administrative function. Service Order No. 178 was entered on January 11, 1944, to become effective January 13, 1944. If the facts now justify it, and the Commission so finds, it can correct the error in Service Order No. 178 by the issuance of an order in accord with its powers and in conformity with the statute under which it acts, without delay.

A governmental department, created by Congress, should be as zealous in following the law as it in turn requires of the public. Here we have an order issued by a department of the Government, a creature of Congress, and dependent solely on an Act of Congress for its authority to act, and whose orders and directives subject to prosecution for a penalty those who violate them; under the circumstances here

218

presented, this Court will not ignore the provision of the Act in order to sustain an order or directive of an administrative body. In reaching the conclusions here expressed, we have not been unmindful that the statute under which the Government is proceeding, being penal in its application, providing a penalty for each violation of a sum not less than $100 nor more than $500 and which penalty the plaintiff seeks to collect by this action, should be strictly construed.

"Preliminary to those inquiries, the defendant contends that the statute upon which the action is brought is penal and should be strictly construed; in which proposition the court unhesitatingly concurs." Providence Steam Engine Co. v. Hubbard, 101 U.S. 188, 191, 25 L.Ed. 786, loc. cit. 788.

### Order.

Motion of the defendant to dismiss the complaint and each count thereof is sustained.