

Decided June 15, 1986

FILED

15 JUL 1986

Clerk
Commonwealth Trial Court
Northern Mariana Islands

By: _____
Ass't. Clerk of Court
(Saipan)

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

GOVERNMENT OF THE NORTHERN )      CIVIL ACTION NO. 84-329
MARIANA ISLANDS, )
                           )
         Plaintiff, )
                           )             SUMMARY JUDGMENT
      vs.                 ) RE:   Defendants M. S. Villagomez,
                           )     T. Villagomez and A. Guerrero
MICRONESIAN INSURANCE )
UNDERWRITERS, INC., et al., )
                           )
       Defendants. )
_____)

     Cross-defendants    M. S. Villagomez,   T. Villagomez   and

A. Guerrero have filed a motion for summary judgment to   escape

potential   liability   mandated   under certain circumstances by

Section 2.7 of Title 37, Trust Territory Regulations.[1]

_____

1/
Section 2.7 reads:
    "2.7   Capital   Necessary   to   Engage   in   Business;
Liability   of   Directors.   No corporation for profit shall
upon the incorporation thereof engage in business   in   the
Territory   until   three-fourths   of its authorized capital
stock has been subscribed for nor until ten percent of   its
authorized   capital   stock   has   been   paid   in by the
acquisition of cash or by the acquisition of property of   a
value   equal to ten percent of the authorized capital stock
...    In case of any violation of   this   section   by   any
corporation,   the incorporators and the directors thereof at
the time the corporation commences to engage   in   business
shall   in their individual and private capacities be jointly
and   severally   liable   to   the   corporation   and   the
stockholders and creditors thereof in the   event   of   its
bankruptcy   or insolvency or in the event of its dissolution
for any   loss   suffered   by   the   corporation   or   its
stockholders or creditors."

    No    one    has contested the viability of the regulation.   It
is only whether it is applicable to the circumstances   of   this
case.

At the hearing of this matter, it became readily apparent that there was no basis for retaining M. S. Villagomez in the lawsuit since there was no "acceptance" or any participation of M. S. Villagomez as a corporate director. It was ordered from the bench that his motion for summary be granted. The Government concedes this action.

As to the other two individuals, the court took the matter under advisement. Heard the same day were similar motions filed against co-defendants Chan and Reyes and a separate opinion disposes of those motions.

In reconstructing the history of the Commonwealth Bank of the Northern Marianas it is clear that the principals had little knowledge or expertise in the basic fundamentals of corporate organization. From the time the Bank received its charter from the government, glaring inconsistencies appear. For the purposes of resolving the motions now before the court, only the pertinent ones need to be set forth.

In April, 1982, the by laws of the corporation specified there were to be five directors and according to the corporate records[2], M. Sablan, Cheung Ting Bong, Albert Camacho, Norman Chan, Karl Reyes, were the initial five directors.[3]

_____

2/
There has been no issue of fact or dispute raised over the genuineness of the corporate records.

3/
As seen in the ruling on the companion motion decided this date, though a formal shareholders meeting and election was not held pursuant to the by-laws of the corporation, it is found that the five directors were in fact directors of the corporation and any attempted distinction between de jure and de facto director has no significance or import.

These five individuals served as the corporation's directors from September 21, 1982 until the Bank went into Receivership on April 30, 1984.

On January 26, 1983, Director Sablan sent a letter to several individuals which in pertinent part states:

> "It gives me great pleasure to reconfirm and announce your appointment to the Board of Directors of Commonwealth Bank of the Northern Marianas, Inc.
>
> This appointment is subject to election by the general shareholders at the first annual meeting next year, 1984. Therefore, the appointment of the current board members of the Bank initially will run for only one year term.
>
> . . ."4

The parties to this motion have, quite naturally, spent some time in trying to discern the legal implications of this letter. Standing alone and without considering any other events, the letter can be quickly disposed of as a gratuitous invitation to become a member of the board of directors (perhaps) in the year of 1984.

What has muddied the waters is the fact that both Guerrero and T. Villagomez proceeded to act as directors by attending

---

4/
The Government and Receiver stress that this letter was also sent to the initial five directors of the corporation. Thus, it is argued, this places Guerrero and Villagomez in the same category as the five directors. This argument has no merit. Although the letter was sent to 11 or 12 people, the fact remains there were only five seats on the Board of Director and the letter is clear to the extent that any "appointment" was subject to election in 1984 and that the current five member board would continue.

meetings, voting on corporate matters and putting themselves before the public as directors of the corporation.[5]

The Government and the Receiver seize upon these actions and representations to classify Guerrero and T. Villagomez as de facto directors. There is no assertion that they were ever de jure directors.

It is true, as pointed out in the motion involving Chan and Reyes that there is a doctrine of de facto directors whereby one is in possession of and exercising powers of the directorship under the claim and color of an election or appointment.

There is no evidence that Guerrero or T. Villagomez were elected[6] and the letter of January 26, 1983 makes any "appointment" subject to election in 1984. The uncontested fact is that the corporation had initially five directors and those five directors never resigned, died or vacated those positions up until the time the Bank went into Receivership.

---

[5] Mr. Guerrero attended (and apparently voted) at Board meetings on 2/3/83, 5/25/83, 7/6/83, 10/18/83 and 2/22/84. He either requested or was provided for his use, a letter of introduction as a Bank board member.

Mr. T. Villagomez attended (and voted) at Board meetings on 2/3/83, 5/25/83, 10/18/83 and 2/22/84.

[6] The similarity between the status of Chan and Reyes with that of Guerrero and T. Villagomez ends here. In the case of Chan and Reyes, though no formal election was held, their directorship ripened by ratification, waiver and acquiescence of 95% of the shareholders and they held two of the five directorships which were established for the corporation.

735

As a general rule, there can be no de facto officer unless there is a de jure office to hold. 18B AmJur2d, _Corporations_, § 1414; Fletcher on Corporations, § 379. Accord, _In re Campbell Country Hardware Co._, 15 F.2d 78, 81 (D.C. Tenn. 1924).

The Government, in a supplemental brief, appropriately points out that the by laws of the Bank could be amended by formal or informal acts and the ratification or acquiescence of having more than five directors. Thus, it is argued, Guerrero and T. Villagomez become directors notwithstanding no formal change of the by laws because all persons within the corporation accepted and agreed to the participation of Guerrero and T. Villagomez as directors.

However, the liability of Guerrero and T. Villagomez rests solely on Section 2.7 and it must be determined if under the circumstances of this case, they come within the scope and intent of it.

A statute or regulation such as Section 2.7 must be given a fair and reasonable interpretation and effect must be given to it according to its intent. Section 2.7, which imposes personal liability upon directors and/or incorporators of a corporation for corporate debts upon their failure to comply with certain requirements, is penal in nature. It, in no way, directly relates to the loss which creditors of the corporation may sustain by reason of the violation of the statute or regulation.

_Steam Engine Co. v Hubbard_, 101 U.S. 188, 25 L.Ed. 786;

736

Western Mortgage & Guarantee Co. v Gray, 215  Cal  191,  8
P.2d 1016, 80 ALR 866.

In  such  a case the statute or regulation must be strictly
construed and cannot be extended beyond the clear import of  its
language  Chase  v  Curtis, 113 U.S. 452, 5 S.Ct. 554, 28 L.Ed
1038; Steam Engine Co. v Hubbard, supra.

Unlike  co-defendants  Chan .and  Reyes,  Guerrero  and
T. Villagomez came upon the scene just as the Bank was  opening
its  doors for business.  This was either February 3rd or a few
days later.

It is clear the intent and purpose of  Section 2.7  is  to
penalize  the  incorporators and directors who are instrumental
or acquiesce in allowing the corporation to open its  doors  in
an  undercapitalized  state.  Since the regulation is penal in
nature, the involvement of Guerrero and T. Villagomez with  the
corporation  as  well as the timing of their entrance upon the
scene is crucial.

The uncontested  facts  show  their  actual  involvement
occurred  no earlier than February 3, 1983.[7]  Thus, at the time
the Bank began business, Guerrero and T. Villagomez had

---

[7]
One document (Exhibit  DD  to  Sablan's  deposition)  is
referred  to by the Government and Receiver as purportedly tying
the defendants to the Bank in 1982.  This is nothing more  than
a  listing  of  names  of  persons which the Bank apparently
intended to subsequently invite to be on the Board of Directors.

There is no showing whatsoever that  the  defendants  even
knew  of  the  document which wasn't signed until December 30,
1983 and not filed with the Registrar  of  Corporations  until
January 3, 1984.

attended one meeting of the Board of Directors. The minutes of the February 3, 1983 meeting (Exhibit Q attached to Sablan's deposition) reveal that Guerrero and T. Villagomez were appointed to an "Examining Committee" but no business was conducted regarding the subscriptions or purchase of stocks.

There is no genuine issue raised that Guerrero and T. Villagomez were involved in or responsible for the undercapitalization of the Bank at the time it opened for business. There is no showing that at the time the Bank engaged in business they even knew of the status of the subscriptions or status of the paid-in capital. Though they may have subsequently become de facto directors, on February 3, 1983, or a few days later when the Bank commenced engaging in business, their acts and activities had not ripened into de facto directorships. To constitute one a de facto director the person must hold office under some degree of notoriety or color of title and the mere assumption of title to office on one occasion cannot make the person a de facto director.

Beraksa v Stardust Records, Inc., 215 Cal.App.2d 708, 30 Cal.Rptr. 504.

Therefore in determining the status of Guerrero and T. Villagomez for the purposes of applying Section 2.7, it is critical to find if they had attained de facto status at the time the Bank initially engaged in business. All of the subsequent acts and activities have no relevance.

It is concluded that the acts, actions, activities, and involvement of defendants Guerrero and T. Villagomez by the

738

time the Bank commenced business does not come within the intent or scope of Section 2.7 and the regulation cannot be applied to impose personal liability on them for the corporate debts. To hold otherwise would fly in the face of reason and common sense. To accept the arguments of the Government and Receiver, Guerrero and T. Villagomez would be liable for a minimum of $600,000 simply because they accepted an invitation to attend a Board meeting on February 3, 1983, which Board meeting (even with hindsight) was innocuous and of no importance in setting the course of events which led to the failure of the Bank and this litigation.

Summary judgment is hereby entered in favor of M. Villagomez, T. Villagomez, and A. Guerrero and this matter is dismissed as to them and they are entitled to their costs of suit.

Dated at Saipan, CM, this 15th day of July, 1986.

_____
Robert A. Hefner, Chief Judge