**DISTILLED BRANDS, Inc.,**
Petitioner,

v.

**W. E. DUNIGAN, Assistant Regional Commissioner, Respondent.**

No. 236, Docket 23146.

United States Court of Appeals
Second Circuit.

Argued April 14, 1955.

Decided May 25, 1955.

868

Menahem Stim, New York City (Curran, Mahoney, Cohn & Stim and John M. Foley, New York City, on the brief), for petitioner.

John Bodner, Jr., Atty., Dept. of Justice, Washington, D. C. (Stanley N. Barnes, Asst. Atty. Gen., Daniel M. Friedman, Sp. Asst. to Atty. Gen., and Charles R. W. Smith, Atty., Alcohol and Tobacco Tax Legal Division, Office of the Chief Counsel, Internal Revenue Service, Washington, D. C., on the brief), for respondent.

Before CLARK, Chief Judge, and FRANK and STALEY, Circuit Judges.

CLARK, Chief Judge.

This appeal concerns the legality of tie-in sales of alcoholic beverages by a wholesaler to a group of independent retailers. In the early part of 1951, petitioner, a wholesaler and distributor, was able to procure from its importer a package deal involving scotch whiskey, then much in demand, and rum, which was more plentiful and hence less salable. Determined to sell this liquor in the same way as it had received it, petitioner made the whiskey available to retailers only as they took proportionate amounts of rum off its hands. The retailers who participated in the 280 tie-in sales which occurred in February and March, 1951, were in no way affiliated with the petitioner, and none of them ever bought any kind or brand of liquor exclusively from the petitioner. On this

evidence the Alcohol and Tobacco Tax Division of the Internal Revenue Service concluded after full hearings that petitioner had violated the so-called "exclusive outlet" and "tied-house" provisions of the Federal Alcohol Administration Act, 27 U.S.C. §§ 205(a) and 205 (b). From this decision and from the consequent suspension of petitioner's license as wholesaler for 20 days, petitioner appeals. See 27 U.S.C. § 204 (h).

Since no serious question has been raised that the tie-in sales did not occur in the manner alleged by the Division, our main concern is whether these sales violated the Act. The pertinent parts of § 5 read as follows: "It shall be unlawful for any person engaged in business as a * * * wholesaler, of distilled spirits, wine, or malt beverages, * * * directly or indirectly or through an affiliate: (a) *Exclusive outlet*. To require, by agreement or otherwise, that any retailer engaged in the sale of distilled spirits, wine, or malt beverages, purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, if such requirement is made in the course of interstate or foreign commerce, or if such person engages in such practice to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such requirement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce; or (b) *'Tied house'*. To induce through any of the following means, any retailer, engaged in the sale of distilled spirits, wine, or malt beverages, to purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, if such inducement is made in the course of interstate or foreign commerce, or if such person engages in the practice of using such means, or any of them, to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such inducement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce: * * * (7) by requiring the retailer to take and dispose of a certain quota of any of such products; * * *." The two major issues under the statute are whether the sales resulted in purchases to the exclusion in whole or in part of other sellers and whether they sufficiently affected interstate commerce.

We agree with the position of the Division that tie-in sales do constitute a sufficient interference with competition to require prohibition within the regulatory scheme of the Federal Alcohol Administration Act, and that § 5, 27 U.S.C. § 205, actually covers such transactions. The Supreme Court has repeatedly characterized tie-in sales as monopolistic in purpose and effect. International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Standard Oil Co. of California v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371. Their restraint on commerce is twofold: The buyer is coerced into accepting a product which he would otherwise not have purchased; and other sellers of the tied-in product are to that extent excluded from the market. These two concomitants of the tie-in sale are dealt with separately in § 5, subsection (a), looking toward the effect on the excluded seller, and subsection (b), concerning itself with coercion of the buyer. Both subsections explicitly state that the forbidden practices need not result in complete exclusion of competitive sellers, but that partial interference will suffice.

Petitioner urges us to limit the statutory prohibition on partial interference to the situation where the whole-

saler controls only some of the various kinds of liquors in which the retailer deals, leaving him free to shop around for the others. Thus petitioner suggests that it would be liable if it had prevented the retailers with whom it dealt from buying any whiskey or rum from other wholesalers, but that it is not liable when it only reduces their purchases of other rums. We see no reason so to limit the statute. The broader reading given to § 5 by the administrative tribunal below is in accordance with the construction put thereon by the Treasury Department since 1946. This construction is of considerable weight, particularly when it is so eminently reasonable in the light of the over-all purposes of this regulatory statute. See Unemployment Compensation ministrative tribunal below is in accord- Commission of Alaska v. Aragon, 329 U.S. 143, 153–154, 67 S.Ct. 245, 91 L.Ed. 136; Western Union Telegraph Co. v. United States, 2 Cir., 217 F.2d 579; United Corp. v. S. E. C., 2 Cir., 219 F.2d 859.

The evidence which supports the conclusion of the Division that petitioner's practices constituted a substantial exclusion of other sellers also supports its finding of a substantial restraint on interstate commerce. The market in which petitioner was buying and selling was certainly one which crossed state lines, and petitioner's transactions constituted a significant segment of that market. Petitioner seeks to avoid the overwhelming proof to this effect by relying on the technicality that the opinion of the Hearing Examiner spoke in terms of the direct effect of hindering sales, rather than of substantial restraint, as charged. This departure from the exact wording of the show cause order was not a material variance, for the petitioner had ample notice of the violations with which it was being charged. See United States v. McKee, 2 Cir., 220 F.2d 266.

■ The only other serious question before us is the sufficiency of the evidence to show willfullness in petitioner's violation of the statute. Only willful misconduct can support suspension of a basic permit once it has been granted. Federal Alcohol Administration Act § 4(e), 27 U.S.C. § 204(e). Petitioner does not deny that it had previously engaged in tie-in sales and had been warned that the government regarded such sales as illegal. Evidence to this effect was properly introduced by a stipulation adverting thereto, which petitioner's counsel permitted to become part of the record. Despite this warning, the petitioner intentionally continued the practice of making tie-in sales. This was sufficient to show willfullness. Arrow Distilleries v. Alexander, 7 Cir., 109 F.2d 397, certiorari denied 310 U.S. 646, 60 S.Ct. 1095, 84 L.Ed. 1412. It is true that the Hearing Examiner also referred to certain articles which should not have been considered because they were dehors the record. But the Director, in affirming and modifying the decision of the Hearing Examiner, explicitly stated that there was enough evidence of willfullness without these articles; and it is his decision, and not that of the Hearing Examiner, which we are reviewing here.

■ Petitioner's remaining arguments as to the propriety of the punishment imposed on it and as to the refusal of the administrative tribunal to reopen the proceedings for the taking of new evidence do not merit detailed discussion. Application of sanctions for violations of the act are primarily the responsibility of the Division, and it did not abuse its discretion here. Wright v. S. E. C., 2 Cir., 134 F.2d 733. Similarly, the Director of the Division was correct in concluding that petitioner had failed to show that the new evidence which it belatedly sought to introduce had not always been in its possession.

The order of the Alcohol and Tobacco Tax Division of the Internal Revenue Service is affirmed.