**MAGNOLIA LIQUOR COMPANY,**
Inc., Appellant,

v.

Claud B. COOPER, Assistant Regional Commissioner, Alcohol & Tobacco Tax Division, (Dallas Region) Internal Revenue Service, Appellee.

No. 14914.

United States Court of Appeals
Fifth Circuit.

April 6, 1956.

Moise S. Steeg, Jr., New Orleans, La., Marcus & Steeg, New Orleans, La., for appellant.

Daniel M. Friedman, Sp. Asst. to Atty. Gen., William O. Braecklein, Asst. U. S. Atty., Dallas, Tex., Stanley N. Barnes, Asst. Atty. Gen., John Bodner, Jr., Attorneys, Department of Justice, Washington, D. C., George R. Blue, U. S. Atty., New Orleans, La., Charles R. W. Smith, Attorney, Alcohol and Tobacco Tax Legal Division, Washington, D. C., for appellee.

Before BORAH and JONES, Circuit Judges, and DAWKINS, District Judge.

JONES, Circuit Judge.

The appellant, Magnolia Liquor Company, Inc., is a wholesale liquor dealer in New Orleans, Louisiana, holding a wholesaler's Basic Permit issued under the Federal Alcohol Administration Act, 27 U.S.C.A. § 201 et seq. Included in the Act are provisions relating to unlawful practices which, in part, are:

"It shall be unlawful for any person engaged in business as a distiller, brewer, rectifier, blender, or other producer, or as an importer or wholesaler, of distilled spirits, wine, or malt beverages, or as a bottler, or warehouseman and bottler, of distilled spirits, directly or indirectly or through an affiliate:

"(a) Exclusive outlet. To require, by agreement or otherwise, that any retailer engaged in the sale of. distilled spirits, wine, or malt beverages, purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, if such requirement is made in the course of. interstate or foreign commerce, or if such person engages in such practice to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such requirement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce; or

"(b) 'Tied house'. To induce through any of the following means, any retailer, engaged in the sale of distilled spirits, wine, or malt beverages, to purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, if such inducement is made in the

course of interstate or foreign commerce, or if such person engages in the practice of using such means, or any of them, to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such inducement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce: * * * (7) by requiring the retailer to take and dispose of a certain quota of any of such products; * * *." 27 U.S. C.A. § 205.

Proceedings were instituted against the appellant charging it with violation of Section 5 of the Act in requiring certain named customers to purchase gin, Seagram's 7-Crown blended whiskey, or cordials in order to obtain Johnny Walker Scotch whiskey or Seagram's V. O. Canadian whiskey. Sales so made are referred to as "tie-in sales". It was also charged that appellant was remiss in keeping required records. Hearings were had before an examiner who held that the appellant had violated the Act as set forth in both of the charges. The examiner recommended a suspension of appellant's permit for 45 days. An appeal was taken to the Director of the Alcohol and Tobacco Tax Division of the Internal Revenue Service who affirmed the findings as to the tie-in sale violation and reversed the examiner on the infraction of the record keeping requirements. The Director reduced the period. of suspension to 15 days. The Assistant Regional Commissioner issued a suspension order from which this appeal was taken.

The appellant is the exclusive wholesale distributor in New Orleans for Seagram Distillers Corporation. Of twenty-eight retail liquor dealers interviewed by a Special Investigator of the Alcohol and Tobacco Tax Division eight were called as witnesses. Of these, seven gave testimony from which the Examiner found that they had bought plentiful items in

order to get the scarce items. The Investigator testified that, in his effort to ascertain whether appellant was tieing V. O. with gin and other products, he picked out isolated invoices for the purpose of demonstrating a pattern. Some of the witnesses testified that they had to buy Seagram's 7-Crown whiskey or Seagram's gin to get V. O. or Johnny Walker. One witness said he was required to buy Seagram's gin in order to get 7-Crown. During the period involved, December, 1950, January, February and March, 1951, the appellant sold 7067 cases of V. O., 29,049 cases of 7-Crown and 2050 cases of Seagram's Gin. The volume of these items in the so-called tie-in sales was 26 cases of V. O., 5 cases of Scotch, 64¼ cases of 7-Crown and 12 cases of gin.

In 1946 an order to show cause had been issued to appellant charging tie-in sales. A stipulation between the Alcohol and Tobacco Tax Division and appellant continued indefinitely the hearing on the order to show cause and in the stipulation appellant agreed not to violate "Sections 5(a) and/or (b)" of the Act. The stipulation provided that it "should not constitute an admission of liability by the respondent [appellant], nor the signing thereof prejudice the legal rights of either party in this, or any further proceedings." The Examiner first excluded this stipulation and later admitted it for the limited purpose of showing that the conduct of appellant was willful. The Director stated that he gave no consideration to the stipulation.

In 1947, The Acting Secretary of the Treasury, in a letter to the President Pro Tempore of the Senate, stated that the Department had concluded that tie-in sales violated Sections 5(a) and 5(b) of the Act where the transactions were of a nature to affect interstate commerce. The letter recited that numerous proceedings had been instituted with the result that many suppliers agreed to discontinue such practices. In the letter it was then said:

"This disposition of the cases was due to doubt on the part of the Department as to whether violations of the statute could be established through the 'tie-in' sales. It was contended by members of the industry that 'tie-in' sales were not within the purview of sections 5(a) and 5(b) and that those sections were designed to prevent the creation of exclusive outlets and tied houses only."

The Acting Secretary proposed to amend the Act by adding to Section 5(c) the words "by conditioning the purchase with the purchase of any other distilled spirits, wine, or malt beverages." On two occasions bills were introduced in Congress which would have expressly prohibited tie-in sales. Neither measure passed.

The appellant here contends:

1. That tie-in sales are not prohibited;

2. That tie-in sales have not been proved;

3. That the proof does not show a practice of tie-in sales "to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce";

4. That there was no "willful" violation of the Act;

5. That the suspension of appellant's permit constituted a taking of property without due process of law;

6. That the regulation of trade practices between a wholesaler and retailers of alcoholic beverages violates the Twenty-first Amendment to the United States Constitution; and

7. The sanction imposed is excessive.

Before the adoption of the Eighteenth Amendment to the Federal Constitution, the activities of the Federal Government in the regulation and control of the alcoholic beverage industry had to do with the collection of revenues. During the era of prohibition the saloon gave way to the speakeasy, importing became rum-running, and bootlegging

acquired respectability of a sort. The Congress enacted the Volstead Act, 27 U.S.C.A. § 1 et seq. and undertook by criminal penalties to enforce the constitutional proscription. With the adoption of the Twenty-first Amendment repealing the Eighteenth Amendment, the Federal Government undertook, in addition to imposing taxes in the manufacture and sale of liquor, measures intended to eliminate some of the social and political evils which brought on prohibition and those which later resulted in repeal. In the Proclamation of President Roosevelt of December 5, 1933, No. 2065, declaring that the Eighteenth Amendment had been repealed, the new policy of the Federal Government was thus stated:

> "The policy of the Government will be to see to it that the social and political evils that have existed in the pre-prohibition era shall not be revived nor permitted again to exist". 48 Stat. 1721 (1933).

The Congress was not in session when repeal became effective. The National Industrial Recovery Act, 48 Stat. 195 (1933) had recently been enacted and codes of fair competition were being adopted pursuant to its provisions. The codes relating to alcoholic beverages contained provisions which prohibited agreements by vendors from exacting or requiring that any retailer handle or sell only the products of a particular member of the industry. When Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, brought an end to the National Industrial Recovery Act and the operations under it, most of the practices outlawed by the codes and not held to be unconstitutional were brought within the prohibitions of the Federal Alcohol Administration Act, supra. As said in the report of the Ways and Means Committee of the House of Representatives:

> "The bill embodies in statutory form so much of the former code system as the committee now deems appropriate and within the constitu-

tional power of Congress to enact. In general, it may be said that the bill incorporates the greater part of the system of Federal control which was enforced by the Government under the codes". H.R.Rep. No. 1542, 74th Cong. 1st Sess. (1935).

It is urged that the Act goes beyond the provisions of the codes. Our initial query is whether the Act prohibits, as the codes did not, the so-called tie-in sales. The only case upon this rather narrow question is Distilled Brands, Inc., v. Dunigan, 2 Cir., 1955, 222 F.2d 867, where it was held that tie-in sales were violations of § 5 of the Act. There a wholesaler had purchased a package deal of Scotch whiskey and rum and sold it as it had received it by requiring the retailers who wanted the Scotch to buy a proportionate part of the rum. It was shown that 280 such tie-in sales occurred over a period of two months. The court stated that the two major issues were whether the sales resulted in purchases to the exclusion in whole or in part of other sellers and whether they sufficiently affected interstate commerce. In upholding the finding of violations made by the Alcohol and Tobacco Tax Division, the Court said:

> "We agree with the position of the Division that tie-in sales do constitute a sufficient interference with competition to require prohibition within the regulatory scheme of the Federal Alcohol Administration Act, and that § 5, 27 U.S.C. § 205, actually covers such transactions. The Supreme Court has repeatedly characterized tie-in sales as monopolistic in purpose and effect. International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Standard Oil Co. of California v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371. Their restraint on commerce is twofold: The buyer is coerced into accepting a product which he would otherwise not have purchased; and other sellers of the tied-in product are to that extent excluded from the mar-

ket. These two concomitants of the tie-in sale are dealt with separately in § 5, subsection (a), looking toward the effect on the excluded seller, and subsection (b), concerning itself with coercion of the buyer. Both subsections explicitly state that the forbidden practices need not result in complete exclusion of competitive sellers, but that partial interference will suffice.

"Petitioner urges us to limit the statutory prohibition on partial interference to the situation where the wholesaler controls only some of the various kinds of liquors in which the retailer deals, leaving him free to shop around for the others. Thus petitioner suggests that it would be liable if it had prevented the retailers with whom it dealt from buying any whiskey or rum from other wholesalers, but that it is not liable when it only reduces their purchases of other rums. We see no reason so to limit the statute. The broader reading given to § 5 by the administrative tribunal below is in accordance with the construction put thereon by the Treasury Department since 1946. This construction is of considerable weight, particularly when it is so eminently reasonable in the light of the over-all purposes of this regulatory statute." Distilled Brands, Inc., v. Dunigan, 2 Cir., 1955, 222 F.2d 867, 869.

■ While there are, in the case before us, some questions raised as to the facts established by the proofs, for the most part the factual phases are without difficulty. The problem posed is primarily one of statutory construction and application. Several of the well recognized rules of statutory construction should be considered in reaching a proper solution of the question raised by this appeal. As said by Chief Justice Marshall, "Where the mind labors to discover the design of the legislature it seizes everything from which aid can be derived". United States v. Fisher, 2 Cranch 358, 2 L.Ed. 304. The statutory

provisions here under scrutiny although not criminal, are penal. Authorization is given to the Secretary of the Treasury to revoke, suspend or annul the permit which the Act requires as a condition to carrying on business. 27 U.S.C.A. §§ 203, 204. A statute which authorizes the sanction of business cessation is indeed penal. For a comment upon the rule by which such laws are to be construed we again turn to Chief Justice Marshall and find the following: "The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself". United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37. See Tiffany v. Missouri National Bank, 18 Wall. 409, 21 L.Ed. 862; Providence Steam-Engine Co. v. Hubbard, 101 U.S. 188, 25 L.Ed. 786.

■■ It may be noted that in the congressional enactment of § 5, the subsections were supplied with titles. The heading of § 5(a) is "Exclusive outlet", and that of § 5(b) is " 'Tied house' ". The heading of a section of a statute, while not conclusive, is proper to be considered in interpreting the statute where ambiguity exists. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Maguire v. Commissioner of Int. Revenue, 313 U.S. 1, 61 S.Ct. 789, 85 L.Ed. 1149. This rule, like many other rules of statutory construction, is inapplicable where there is no textual ambiguity. United States v. Minker, 350 U.S. 179, 76 S.Ct. 281, 100 L.Ed. ——. Tie-in sales do not, of course, and no contention is made that they do, come within the ban against exclusive outlets and tied houses.

■ Where the meaning of legislation is doubtful or obscure, resort may be had in its interpretation to the reports of congressional committees which have considered the matter. See Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L. Ed. 736, 112 A.L.R. 1455, and authorities there cited. Construing the Act strictly against the Government as we think we must do, and looking to the

intent of the Congress as disclosed by the committee report from which we have quoted, we cannot say that the Act prohibited or was intended to prohibit tie-in sales.

■■ The contemporaneous construction of a statute by an administrative agency charged with the duty of enforcement is entitled to respectful consideration. Fox v. Standard Oil Co., 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780. Here we have the Alcohol and Tobacco Tax Division construing the Act in 1946 as prohibiting tie-in sales. But the Division had no such confidence then in its interpretation as to seek enforcement by sanctions. Instead, it sought stipulations. It confessed its doubt as to whether violations could be established through tie-in sales. It recognized the contention of members of the industry that tie-in sales were not prohibited. It sought to have the doubt resolved by an amendment to the Act bringing tie-in sales within the prohibited practices. The Congress did not see fit to grant the administrative request. Counsel for the Government say to us that the simple introduction of a bill to amend a statute, without any further proceedings thereon, "is without meaning for purposes of statutory interpretation", citing Order of Railway Conductors v. Swan, 329 U.S. 520, 67 S.Ct. 405, 410, 91 L.Ed. 471. A recognition of such a principle would not preclude us, in our "labors to discover the design" of the framers of the Act from seizing upon the expressed doubts of the Treasury Department as an aid to construction.

The Division recognized that the language of § 5 was ambiguous by not attempting, in 1946, to apply the sanctions of the Act to those making tie-in sales. There was a further recognition of the ambiguity in the letter from the Acting Secretary to the President Pro Tempore of the Senate. The doubt which was then recognized by the Treasury Department and its Alcohol and Tobacco Tax Division has not been dispelled from our minds. We resolve that doubt in favor of the appellant and hold that the Act does not prohibit tie-in sales.

The opinion in Distilled Brands v. Dunigan, supra, gives to § 5 the "broader reading" of the administrative tribunal, and finds such to be in accord with "the construction put thereon by the Treasury Department since 1946". Since it does not appear from the opinion in the Distilled Brands case that the letter of the Acting Secretary was before the court, we assume that the court was entitled to find from the evidence before it that there had been a continuous and confident administrative construction consonant with its contention there and here asserted.

The appellant, in addition to its contention that tie-in sales are not prohibited by the Act, urges other grounds for reversal. Some of these, we think, have merit but the view which we have taken makes a determination of them unnecessary.

The order suspending the permit of appellant is set aside and

Reversed.