**Bill Rapp TURNER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 25906.**

United States Court of Appeals
Fifth Circuit.

April 28, 1969.

Samuel S. Jacobson, Jacksonville, Fla., for appellant.

Gary B. Tullis, Asst. U. S. Atty., Edward F. Boardman, U. S. Atty., Middle District of Florida, Jacksonville, Fla., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and KEADY, District Judge.

KEADY, District Judge:

Appellant was indicted for refusal to be inducted into the armed forces of the United States on September 26, 1967, in violation of 50 U.S.C.App. § 462(a).[1] He entered a not guilty plea, was tried before the District Court without a jury, convicted, and sentenced to a term of four years' imprisonment. Defendant contends on this appeal, as at trial, that he was wrongfully deprived of a hearing before an officer of the Department of Justice when his appeal from 1–A classification was processed under § 6(j) of the Military Selective Service Act of 1967, Pub.L. 90–40, 81 Stat. 100, 50 U.S.C.App. § 456(j), rather than under the provisions of its statutory predecessor, the earlier Universal Military Training and Selective Service Act.

On January 28, 1963, appellant registered with his local selective service board, as required by 50 U.S.C.App. § 453, and was placed in 1–A classification shortly thereafter. He received a series of student deferments for the next several years, but on March 6, 1967, was again placed in Class 1–A. On March 24, 1967, he appeared before his local board, requesting further deferment as a student, which request was rejected unanimously. On May 9, 1967, appellant

---

1. 50 U.S.C. App. § 462(a) provides, in pertinent part:

"[A]ny person who * * * evades or refuses registration or service in the armed forces or any of the requirements of this title * * * or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title * * * or rules, regulations, or directions made pursuant to this title * * * shall, upon conviction in any district court of the United States by competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *."

Regulation § 1632.14 provides:

"[a] When the Local Board mails to a registrant any Order to Report for Induction * * * it shall be the duty of the registrant to report for induction at the time and place fixed in such order * * *

"[b] Upon reporting for induction, it shall be the duty of the registrant * * * (5) to submit to induction."

applied for conscientious objector status (1–O), and his 1–A classification was reopened for consideration of that application; his request was denied and his classification remained 1–A. On May 26, 1967, he filed with the local board an appeal from this classification; on June 13, 1967, the local board forwarded his file to the appeal board which met on July 12, 1967, and voted to continue appellant in the 1–A classification.[2] On August 29, 1967, appellant was notified of this decision and was also advised that no further action was contemplated by the Selective Service officials. On September 6, 1967, appellant was ordered by the local board to report for induction, to which he interposed objection for not having received Department of Justice consideration of his claim as a conscientious objector.

On the date appellant perfected the appeal of his 1–A classification, and until June 30, 1967, § 6(j) of 50 U.S.C.App. § 456(j) provided that in the case of an adverse ruling by a local draft board on a registrant's claim for draft exemption as a conscientious objector, the registrant might appeal to an appeal board, in which case the Department of Justice, after appropriate inquiry, was required to hold a hearing and hereafter to make a recommendation to the appeal board as to the registrant's inductibility or deferability.[3] The New Military Selective Service Act of 1967, Pub.L. 90–40 § 1(7), which became effective on June 30, 1967,[4]—subsequent to the date appellant perfected his appeal but prior to a referral of his file to the Justice Department—omits all reference to a hearing conducted by the Department of

2. The appeal board took the same action again on August 2, 1967.

3. Prior to June 30, 1967, the relevant part of § 6(j) of the Selective Service Act of 1948, Pub.L. 80–759, read as follows:
    " * * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. * * * If after such hearing the Department of Justice finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board shall, in making its decision, give consideration to, *but shall not be bound to follow, the recommendation of the Department of Justice together with the record on appeal from the local board.*" (Emphasis added)
    Also prior to June 30, 1967, Selective Service Regulations, 29 CFR 1626.25 (1962), provided for an FBI investigation, hearing by a Department of Justice official at which the registrant could be represented by counsel

and offer evidence, including testimony of witnesses, a report by Justice Department to the appeal board, and an opportunity to reply to the Justice Department report. These regulations were rescinded on June 30, 1967, by Executive Order No. 11360, whereby all these special features were eliminated from the Selective Service Regulations.

4. Section 6(j) (50 U.S.C.App. § 456(j) is amended to read as follows:
    " * * * Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title, be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title, to have knowingly failed or neglected to perform a duty required of him under this title."

Justice on referral from a state appeal board, thereby repealing the former procedure. The appeal board, on July 12, 1967, classified appellant 1–A without the benefit of Justice Department assistance, apparently taking the position that appellant's right to a Justice Department investigation and hearing died with the old law.

■ The District Court correctly held that appellant had no vested right to the form of administrative procedure in effect on the date he appealed his 1–A classification and that the provisions of the Military Selective Service Act of 1967 were properly applied to his appeal.

■ Although this nation has, throughout its history, consistently accorded deference to those who conscientiously objected to military service,[5] there is no constitutional right to exemption as a conscientious objector—it is merely a grant from Congress, extended out of respect for the religious or moral scruples of the individual and in recognition of the fact that to conscript those opposed to war would be detrimental to the morale of the military. United States v. Macintosh, 283 U.S. 605, 51 S. Ct. 570, 75 L.Ed. 1302; Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084. See also Imboden v. United States, 194 F.2d 508 (6 Cir. 1952), cert. den. 343 U.S. 957, 72 S.Ct. 1052, 96 L. Ed. 1357. The power "to declare war" necessarily connotes the plenary power to wage war with all the force necessary to make it effective. The power "to raise armies" necessarily connotes the like power to say who shall serve in them and in what manner. "From its very nature the war power, when necessity calls for its exercise, tolerates no qualifications or limitations * * *." United ed States v. Macintosh, 283 U.S. at 622, 51 S.Ct. at 574, 75 L.Ed. at 1309.

In United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, the questions presented were whether, under the old statute, selective service registrants were entitled, at the Department of Justice hearing, to examine the FBI reports of investigations of their background and reputation for sincerity, and, if not, whether the statute, as so construed, amounts to a denial of due process of law. The Court answered both questions in the negative, stating at 346 U.S. 8, 73 S.Ct. 996, 97 L.Ed. 1424–1425 as follows:

"The Department of Justice takes no action which is decisive. Its duty is to advise, to render an auxiliary service to the appeal board in this difficult class of cases. *Congress was under no compulsion to supply this auxiliary service*—to provide for a more exhaustive processing of a conscientious objector's appeal

\* \* \* \* \*

"The Selective Service Act is a comprehensive statute designed to provide an orderly, efficient and fair procedure to marshal the available manpower of the country, to impose a common obligation of military service on all physically fit young men. It is a valid exercise of the war power. It is calculated to function—it functions today—in times of peril. Even so, Congress took care to provide special treatment for those who could not reconcile participation in the defense effort with their religious beliefs—if

5. Deference was given, at the First Continental Congress, to the feelings of those who refused to bear arms because of religious scruples. 2 JOURNALS OF THE CONTINENTAL CONGRESS 189 (1905). During the Civil War the federal government's conscription laws were amended to provide noncombatant duties for conscientious objectors. Act of Feb. 24, 1864, Ch. 13, § 17, 13 Stat. 9. The Draft Act of 1917, passed during the First World War, exempted those who were affiliated with historic peace churches. Act of May 18, 1917, Ch. 15, 40 Stat. 78. The Training and Service Act of 1940, 54 Stat. 889, broadened the exemption to include all those who had conscientious objections, because of religious training and belief. See Gianelli, "Religious Liberty, Non-establishment, and Doctrinal Development—Part I: The Religious Liberty Guarantee," 80 Harv.L.R. 1381, 1413 (May 1967).

those beliefs were a matter of sincere conviction." (Emphasis added)

█ Thus, it appears that the provision for a Department of Justice inquiry, hearing and recommendation was merely a specialized procedure for assisting an appeal board to reach a more informed judgment with respect to conscientious objector claims,[6] and did not create substantive rights for claimants.

This special concern manifested by the Congress in calling for Department of Justice processing was unique to conscientious objectors and never granted for registrants of any other class.[7] Prior to the adoption of the June 30, 1967, amendment, failure to conduct a Department of Justice hearing required reversal of a conviction for refusal to submit to induction. Bates v. United States, 348 U.S. 966, 75 S.Ct. 529, 99 L.Ed. 753, Per Curiam (1955); Sterrett v. United States, 216 F.2d 659 (9 Cir. 1954). Appellant contends that the amendment should apply prospectively only and not to a pending case, and also that to apply the change in law and regulations to him during the pendency of his appeal would be unjust since he, in anticipation of and relying upon being accorded a Department of Justice hearing, had refrained from personally appearing before the local board in support of his claim as a conscientious objector.[8] In answer thereto, appellee urges that the 1967 amendment was merely remedial and procedural in nature and not subject to the general rule that, absent a clear legislative intent to the contrary, statutes are to be given prospective effect only.

█ Appellant's hardship, to the extent it may exist, resulted primarily from his failure to utilize the procedures before the local board available to all registrants; and his claim for denial or right cannot stand upon a mere change in the policy of Congress occasioned by the withdrawal of special procedures which it saw fit no longer to provide. Insofar as the amendment to § 6(j) is concerned, it unmistakably related to matters of procedure and remedy only and not of substance. No exception appears in the amendment for appeals pending at time of enactment, nor is other indication given that the amendment should be less than universally applied. Even if the amendment contained an ambiguity, which is not the case, its legislative history serves to remove all doubt.[9] The Senate and House Committee reports disclose that the provision for Department of Justice processing of conscientious objector claims was eliminated to avoid substantial and unnecessary delays caused by the increased number of such appeals without corresponding significant advantages.[10]

6. "Observers sympathetic to the problems of the conscientious objector have recognized that this provision in the statute improves the system of review by helping the appeal boards to reach a more informed judgment on the appealing registrant's claims." United States v. Nugent, 346 U.S. 1, 9, 73 S.Ct. 991, 996, 97 L.Ed. 1417.

7. The origin of the procedure dates from the passage of the 1940 Selective and Service Act § 5(g), 54 Stat. 885, 889, and was preceded by little discussion in Congressional quarters. See Fn. 1 in United States v. Nugent, supra.

8. Appellant did submit to the local board a written statement detailing his views against war, along with letters from eight other persons supporting his claims as a conscientious objector.

9. Magnolia Liquor Co. v. Cooper, 231 F. 2d 941 (5 Cir. 1956):
"[W]here the meaning of legislation is doubtful or obscure, resort may be had in its interpretation to the reports of congressional committees which have considered the matter." Cf. Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed. 623 (1960).

10. Report No. 267, House Committee on Armed Services, 90th Congress, First Session. Military Selective Service Act of 1967 (S. 1432) page 31, U.S.Code Cong. & Admin.News 1967, p. 1334:
"The committee's awareness that the processing of conscientious objector appeals has resulted in delays exceeding 2 years, prompted the committee to completely rewrite this provision of the law."
House of Representatives Conference Report No. 346, 90th Congress, 1st Session

The congressional committees were directly informed by the Attorney General that it would minimize uncertainty and avoid the risk of procedural defenses in prosecution "if a transitional provision were added * * * *to specify the intent of Congress with respect to the proper procedure in pending appeals."[11] This recommendation was not adopted.[12] We thus perceive no reason why purely administrative and procedural changes in laws presently operating to draft the manpower of this nation for military service should have other than a direct and immediate effect to accomplish the vital purpose of the legislation.

■ Granting that, in the absence of an expressed legislative intent, statutes affecting antecedent rights are ordinarily addressed to the future and to be given prospective effect only,[13] that can-

on of construction must yield to the rule here controlling that changes in statute law relating only to procedure or remedy are usually held immediately applicable to pending cases, including those on appeal from a lower court. This last mentioned rule of statutory interpretation defers only to a contrary intention manifested from the wording of the statute or, if it is unclear, from its legislative history. Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L. Ed. 409 (1916); Bowles v. Strickland, 151 F.2d 419 (5 Cir. 1945); Bowles v. Miller, 151 F.2d 992 (10 Cir. 1951); Dargel v. Henderson, 200 F.2d 564 (Em. App.1952). In *Hallowell,* the Supreme Court held applicable to a suit pending in federal court to determine Indian heirship a statute vesting the Secretary of the Interior with jurisdiction of such

---

(to accompany S. 1432), page 15, U.S. Code Cong. & Admin.News 1967, p. 1359:

"The House language amended the existing provision of law relating to conscientious objectors by—

1. Eliminating the requirement for a hearing by the Department of Justice when there is an appeal from a local board decision denying conscientious objector status, and

* * * * *

"The Senate language contained no similar provision.

"The Senate conferees agreed in principle with the objectives of the House language. The Senate agreed that the referral on appeal of all conscientious objector cases to the Department of Justice had resulted in unnecessary delays in the processing of these cases without corresponding significant advantages. Therefore, the deletion of this referral requirement was accepted by the Senate."

11. Letter dated June 1, 1967, from Ramsey Clark, Attorney General of the United States, jointly to Richard Russell, Chairman, Senate Committee on Armed Services, and L. Mendel Rivers, Chairman, House Committee on Armed Services.

12. The only response from the Joint Conference Committee was to agree that, although no longer required, it would be proper for Department of Justice processing to be completed for the 2700 cases

then pending in the Department, *despite the change in law.* House of Representatives Conference Report No. 346, 90th Congress, 1st Session (to accompany S. 1432), page 15 U.S.Code Cong. & Admin. News 1967, p. 1360:

"The conferees have been advised by the Attorney General that there are currently approximately 2,700 conscientious objector cases being processed by the Department of Justice. The House-Senate conferees believe that the processing of these cases should be completed despite the change in the law and advisory opinions referred to the individual appeal boards not later than 12 months after enactment of the Military Selective Service Act of 1967."

Moreover, this expression related only to those appeals which had, in fact, been referred to Justice Department, with respect to which varying effort and expense had already been incurred and which were divided into four groups described by the Attorney General's letter. None related to such appeals, unknown in number, still in the Selective Service System, as was appellant's, and which had not actually been referred to Justice Department.

The panel of judges hearing this case requested supplemental briefs on the meaning and import of the Joint Conference Committee Report, above quoted, but received no response from appellant.

13. Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964).

controversies upon the reasoning that the statute enacted after suit was begun

" \* \* \* made no exception for pending litigation, but purported to be universal, and so to take away the jurisdiction that for a time had been conferred upon the courts of the United States. \* \* \* [The statute] takes away no substantive right, but simply changes the tribunal that is to hear the case. In doing so it evinces a change of policy, and an opinion that the rights of the Indians can be better preserved by the quasi paternal supervision of the general head of Indian affairs. The consideration applies with the same force to all cases, and was embodied in a statute that no doubt was intended to apply to all, so far as construction is concerned."

This Court in Bowles v. Strickland, supra, held that the action of the Price Administrator in wrongly instituting suit under the Emergency Price Control Act of 1942, 50 U.S.C.App. § 901, et seq., without first obtaining requisite approval of the Secretary of Agriculture was cured by an amendment eliminating that requirement, which was enacted during the pendency of the appeal to this Court. It was said: "As this amendment did not affect substantive rights, but related only to the procedural machinery provided to enforce such rights, it applied to pending as well as to future suits. See 50 American Jurisprudence, page 505, Section 482. A suit in process of appeal \* \* \* is a pending suit."

Sterrett v. United States, 216 F.2d 659 (9 Cir. 1954), relied upon by appellant, is not applicable to the issue raised on this appeal. In that case the Court held that a change in Selective Service regulations to deny a Department of Justice hearing in *certain classes* of conscientious objector cases was unauthorized by, and contrary to, § 6(j) of the former statute, and it was not concerned with a change in the statute itself. But directly in point is the holding of the District Court in United States v. Haughton, 290 F.Supp. 422 (W.Wash.1968), in which conviction for refusal to be inducted was imposed by Judge Boldt in a clear and instructive opinion, based upon reasoning to which we subscribe, and concluding that no registrant had a vested right in the "auxiliary service" of a Department of Justice inquiry and hearing so as to survive the 1967 amendment to § 6(j). The Act must be and is so construed.

The judgment of the lower court is affirmed.